**CHASE MANHATTAN FINANCIAL SERVICES, INC., Plaintiff**

**v.**

**OIL SCREW "J. RAYMOND", her engines, tackle, appurtenances, etc., *in rem*, and DAVID KINKAID, *in personam*, Defendants**

Civil No. 90-102

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 17, 1990

 

JOHN H. BENHAM, ESQ., St. Thomas, V.I., *for plaintiff*

MARSHALL A. BELL, ESQ., St. Thomas, V.I., *for claimants*

WOLIN, *District Judge*

### MEMORANDUM

This matter came for hearing before the Court on December 13, 1990, for a determination as to the ownership of a dinghy and a Mercury outboard engine seized by plaintiff in the underlying admiralty

action. The Court heard arguments from counsel and testimony from witnesses Blaine Robinson and claimant William Hall. Plaintiff asserts ownership of the equipment based upon certain mortgage provisions and its interpretation of the law as set forth in United States v. F/V Sylvester F. Whalen, 217 F. Supp. 916, 917 (D. Me. 1963). The Court finds as a matter of fact, that Blaine Robinson is the rightful owner of the dinghy and that claimants William Hall, Sally Hall and Paradise Yacht Charters d/b/a Paradise Sailing Club (hereinafter "claimants") are the rightful owners of the outboard engine.

## I. FACTS

This case began when defendant David Kinkaid ("Kinkaid") defaulted on a ship's mortgage given to plaintiff Chase Manhattan Financial Services, Inc. (hereinafter "the Bank"). On November 1, 1985, Kinkaid borrowed $65,000 from plaintiff and gave the Bank a promissory note for the same amount. As interim security for the loan, the Bank received a security interest in defendant The Oil Screw "J. Raymond."

Subsequently, Kinkaid appointed Carol Matthews as his agent, and authorized her to execute on his behalf a First Preferred Ship Mortgage in favor of the Bank or its assigns. On February 10, 1986, Carol Matthews, acting as agent for Kinkaid, executed and delivered to the Bank a First Preferred Ship Mortgage (hereinafter "Mortgage") covering the "J. Raymond." Paragraph 6 of the Mortgage describes the vessel and equipment being covered:

> To secure this Obligation, Mortgagor hereby mortgages to Mortgagee the whole of the Oil Screw . . . together with masts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies, and all fishing and other attachments and accessories, now forming part of the Vessel or used in or on the Vessel or which may be come part of the Vessel in the future, whether or not removed from the Vessel (all called the "Vessel").

On February 21, 1986, the mortgage was received, recorded and endorsed by the United States Coast Guard at Houston, Texas pursuant to 46 U.S.C. § 31321.

Kinkaid then failed to make certain payments due under the Mortgage. As a result, the Bank declared the entire balance to be due and owing, together with all other sums owing under the promissory note

and the security agreement. Plaintiff filed an action in admiralty against defendants on April 25, 1990. See Rule 9(h) of the Federal Rules of Civil Procedure. The vessel "J. Raymond," a dinghy and an outboard engine were arrested on April 26, 1990. Defendants were adjudged to be in default by the Court on October 11, 1990.

Claimants, a bareboat charter company, filed their claim against the vessel on May 16, 1990, asserting a maritime lien against the "J. Raymond" for necessaries provided to the vessel. Claims were also made for the return of a twelve foot Tortola dinghy bearing the name "J. Raymond," a Mercury outboard engine and certain other items[1] which were seized with the vessel when it was arrested.

Claimants first began working with defendants in October 1988. Blaine Robertson, a former employee of V.I.P. Yacht Charters, testified that the "J. Raymond" was one of four boats brought by him from V.I.P. Yacht Charters in Benner Bay to Paradise Yacht Charters in Red Hook. Mr. Robertson stated that when the four boats were sailed to Paradise Yacht Charters, they were accompanied by four dinghies and three outboard engines. Mr. Robertson could not remember, however, whether the dinghy attached to the "J. Raymond" had an engine. Claimant William Hall testified later that this dinghy did not have an engine and that he purchased the engine at issue in December 1988.

Mr. Hall testified that it was the practice of Paradise Yacht Charters to supply every charter trip with a dinghy, an outboard engine and oars. He stated that he painted the name "J. Raymond" on the dinghy in question in order to make it easier for his customers to locate the proper dinghy when the docks were crowded. Mr. Hall stated that although he tried to keep a dinghy or engine together with a particular yacht, the dinghies and engines were interchangeable and at times were paired with any yacht that needed one.

Claimants' relationship with Kinkaid was based upon an October 1, 1989 "Yacht Management Agreement" (hereinafter "Agreement"). The Agreement provided that claimants were "employ[ed] . . . for the purpose of obtaining charterers for [Kinkaid's] yacht and . . . to prepare, manage and advise [Kinkaid] in connection with the ownership,

---

[1] In attachment A-1 to their claim, claimants contend that the following items are personal property belonging to them: 1 fiberglass fuel tank, 1 fresh water pump, 1 shower pump, 1 telescoping boat hook, 24 4 D batteries, 1 500 MB battery, 2 snatch blocks, a 90′ ½″ dock line, a 20′ 5⁄16″ chain, a 150′ 5⁄16″ anchor rope, a 100′ 7⁄16″ braid, 1 heat exchanger, 1 racor filter and head gasket parts.

chartering, maintenance and other related services." See Agreement at 1. The Agreement also provided that claimants were to supply "repair [work], maintenance, cleanup and charter preparation." Id. at ¶ 4.

On October 4, 1990, a Memorandum and Order was issued by the Court, finding that claimants did not have a maritime lien against the "J. Raymond." See Memorandum at 8. The Court held that a determination as to the ownership of the dinghy and outboard engine was to be made at a later time.[2] Id. at 6. The Court now considers the parties' arguments as to the ownership of the engine and dinghy.

## II. DISCUSSION

Plaintiff claims that under the Paragraph 6 of the Mortgage, the dinghy and the outboard engine became part of the "J. Raymond" when they were supplied to it by claimants. Citing United States v. F/V Sylvester F. Whalen, 217 F. Supp. at 917, plaintiff contends that the dinghy and the engine are subject to the bank's lien because they are an "integral part of the vessel and are essential to its navigation and operation." Plaintiff argues that this equipment is an essential part of the "J. Raymond" regardless of who the actual owner may be. Plaintiff implies that this argument is supported by the fact that the dinghy has the name "J. Raymond" painted on its side.

Claimants respond that plaintiff's argument leaves no room for an equitable resolution when the equipment of innocent third parties is seized after being lent to a vessel, when there was no intention of making it a part of that vessel. Claimants offer factual proof that dinghy and engine are not a part of the "J. Raymond," and belong to other parties.

The Court finds that plaintiff's argument is without merit. First, the factual record clearly indicates that the dinghy is owned by Blaine Robertson and that the engine is the property of claimants. Secondly, plaintiff has failed to offer any support for its contention that this equipment has been installed as an integral part of the "J. Raymond," and is essential to its navigation and operation. Plaintiff's reliance on F/V Sylvester F. Whalen is misplaced. In that case, the Court considered the utility of a fathometer and radar equipment. Such equipment was indeed found to be essential to a ship's

---

[2] The ownership of the remaining personal items sought by claimants is no longer at issue. These items were excluded by the Court's October 4, 1990 Memorandum and Order and no objection thereto was raised by claimants.

navigation and operation as a fishing vessel. Id. at 917. By way of contrast, the dinghy and engine are not "installed," nor are they essential to navigation or even to the operation of the vessel. As provided for under the Mortgage, the "J. Raymond" was intended to be used for non-commercial usage, therefore, plaintiff cannot now contend that a dinghy or outboard engine are essential to a charter operation.[3]

Moreover, plaintiff has not shown the Court that the Mortgage upon which foreclosure is based, was intended to cover these after-acquired pieces of equipment when they have not been made a part of the vessel itself. Thus, plaintiff will have to look to defendant Kinkaid to cover any deficiency left in the underlying judgment in this case.

An appropriate order will be entered.

## ORDER

This matter having come before the Court on December 13, 1990 for a hearing as to the ownership of a dinghy and Mercury outboard engine seized in the underlying admiralty action; and

The Court having considered the submissions of the parties and the arguments of counsel; and

For the reasons set forth in the Court's memorandum of this date;

IT IS on this 17th day of December, 1990, hereby

ORDERED THAT the application of plaintiff Chase Manhattan Financial Services for the inclusion of the twelve foot Tortola dinghy and Mercury outboard engine as part of the equipment subject to its First Preferred Ship Mortgage is DENIED.

THAT Blaine Robertson is the rightful owner of the twelve foot Tortola dinghy.

THAT claimants William Hall, Sally Hall and Paradise Yacht Charters d/b/a Paradise Sailing Club are the rightful owners of the Mercury outboard engine.

THAT no further matters remain pending and this matter is hereby DISMISSED.

---

[3] Paragraph 16 of the Mortgage required Kinkaid to obtain the Bank's written permission before using the "J. Raymond" for commercial purposes, such as chartering. Kinkaid did not acquire written permission. Plaintiffs therefore are foreclosed from asserting that paragraph 6 includes commercial necessities.